IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 14-159 |
| MICHAEL GREEN | : | |

**SURRICK, J.**                                                                              **JULY 20, 2014**

## <u>MEMORANDUM</u>

Presently before the Court is Defendant Michael Green's Motion to Suppress Out-of-Court and In-Court Identification (ECF No. 38). For the following reasons, Defendant's Motion will be denied.

## I.      BACKGROUND

### A.      Procedural Background

On April 4, 2014, a federal grand jury returned a two-count Indictment against Michael Green (a/k/a "Mikey") charging him with carjacking, in violation of 18 U.S.C. § 2119, using and carrying a firearm during and in relation to a crime of violence, and brandishing that firearm, in violation of 18 U.S.C. § 924(c)(1)(A), and aiding and abetting, in violation of 18 U.S.C. § 2. (Indictment, ECF No. 1.) On July 7, 2014, Green filed a Motion to Suppress Out-of-Court and In-Court Identification. (Green's Mot.; ECF No. 38.) On July 18, 2014, we held a hearing on the Motion. At the hearing, we heard testimony from Osvaldo Ortega, a victim of the alleged carjacking, and Detective Palmiero, a Philadelphia Police Officer who investigated the alleged carjacking. (Min. Entry, ECF No. 51.) The following Findings of Facts are based on the testimony heard and evidence presented during the hearing.

**B.      Findings of Fact**

On December 5, 2012, at approximately 9 p.m., Ortega was driving a Chevrolet Silverado

pick-up truck (the "truck") with two passengers, Juan Saez and Luis Rosado, in Northeast

Philadelphia when a sedan with blue and red flashing lights pulled up behind him.  (July 18,

2014 (on file with court).)  When Ortega saw the flashing lights, he pulled over on the 4300

block of McMemany Street.  (*Id.* at 34-36.)  Two men then exited the sedan and approached the

truck.  (*Id.* at 37-38.)  The men were wearing silver badges around their necks and vests that said

"police."  (*Id.* at 37-38, 44.)  The driver of the sedan approached the driver's side of the truck.

(*Id.* at 40.)  He spoke with Ortega at eye level from a distance of no more than two feet.  (*Id.* at

40-42.)  The driver's face was not covered.  (*Id.* at 40.)  Ortega could see the driver's facial

features at the time because the area was lit by a street light.  (*Id.* at 45.)  The driver told Ortega

he was a police officer and indicated that Ortega was under arrest.  (*Id.* at 44-45.)  Ortega asked

why he was under arrest.  (*Id.*)  The driver repeated that Ortega was under arrest and he told

Ortega to get out of the truck.  (*Id.* at 45.)  Ortega responded telling the driver he was not a real

police officer because he had not asked for Ortega's license, registration, and insurance.  (*Id.* at

46.)  The driver was brandishing a gun.  (*Id.* at 47.)  He opened the driver's door of the truck,

pulled Ortega out of the truck, slammed him on the ground, handcuffed him behind his back, and

thereafter pushed him into the back of the truck.  (*Id.* at 46.)  The other passengers, Saez and

Rosado, were similarly placed in handcuffs and forced into the back of the truck.  (*Id.* at 48.)  At

this point, the driver of the sedan got back into the sedan and drove several blocks, while the

other man dressed as a police officer drove the truck.  (*Id.* at 49-51.)  The driver of the sedan

then parked the sedan and got back into the front passenger seat of the truck.  (*Id.* at 51.)  Ortega

was able to again directly view the driver of the sedan's face because the dome light in the truck

was on during the entire incident, and his face was still uncovered.  (*Id.* at 51-52.)  Once the

driver of the sedan got into the truck, the other man continued to drive the truck.  (*Id.* at 53.)

Ortega started talking to Saez and Rosado in Spanish about how the men were not real police

officers and they had to escape.  (*Id.* at 53.)  The driver of the sedan then told Ortega to "shut-

up" several times, and when Ortega continued talking, the driver of the sedan turned around

facing Ortega, reached over the front seat of the truck, and struck Ortega with the gun.  (*Id.* at

53-54.)

Eventually, Rosado was able to open the back door of the truck and jump out, while still

handcuffed.  (*Id.* at 58.)  After Rosado jumped out, the driver of the sedan attempted to close the

truck door, again giving Ortega an unobstructed view of his face.  (*Id.* at 58-59.)  Ortega and

Saez also managed to jump out of the truck and eventually contacted the police.  (*Id.* at 59.)  The

police drove Ortega and Saez back to the scene of the carjacking.  Saez identified the sedan that

was used to approach the truck.  (*Id.*)  Ortega and Saez where then taken to the police station

where they were interviewed.  (*Id.* at 60.)  Ortega described the driver of the sedan to Detective

Palmiero as a tall, skinny, black man with a beard, wearing a black police vest.  (*See id.* at 7, 60.)

Detective Palmiero first learned of the carjacking that night when he arrived at work

sometime around midnight.  (*Id.* at 20.)  He was informed that a carjacking had occurred and was

told that the car that was identified as being used in the carjacking had been rented to Defendant

Michael Green.  (*Id.* at 8.)  Based on that, Detective Palmiero created a photo array that

contained Green's photograph to show to the victims of the carjacking so that Green could be

either identified as a suspect or ruled out as a suspect.  (*Id.* at 9.)  To create the photo array,

Detective Palmiero first searched for a photograph of Green using computer program.  (*Id.* at 7.)

Then, Detective Palmiero chose Green's most recent photo from the results, and the program

randomly place the chosen photo into one of eight positions in the photo array.  (*Id.* at 9.)  The

computer program next generated images similar to Green's based on his ethnicity, age, and

background.  (*Id.* at 9.)  Detective Palmiero then looked through the images generated by the

program and manually selected seven more images that looked the most similar to Green.  (*Id.* at

9.)  Detective Palmiero indicated that in this particular circumstance he was looking for images

of individuals that had similar facial hair to Green and a similar oblong facial structure.  (*Id.* at 9,

29-30.)

Detective Palmiero used the photo array he created during his interview with Ortega.

Approximately three hours after the carjacking, Detective Palmiero showed Ortega a

photographic array and asked him if he recognized anyone.  Ortega looked at the photo array and

after several seconds he identified Defendant's photograph.  (*Id.* at 11-12, 61-62.)  Detective

Palmiero did not make any suggestions to Ortega, verbally or non-verbally, on who Ortega

should identify in the array.  (*Id.* at 12.)  Ortega circled the man he had identified on the photo

array and wrote that he was the "tall, skinny guy" involved in the carjacking who "had a beard."

(*Id.* at 15, 62-63.)  Ortega also signed and dated the identification.  (*Id.* at 62-63.)  Ortega

mistakenly wrote the date as "12/16/12."  (*Id.* at 15-16, 63-64.)  The identification occurred on

December 6, 2012, within hours of the carjacking.  (*Id.*)

## II.     LEGAL STANDARD

A defendant's due process rights are violated when an identification procedure is "both

(1) unnecessarily suggestive and (2) creates a substantial risk of misidentification."  *United*

*States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006).  There are two parts to determining

whether an identification procedure is unnecessarily suggestive:  (1) whether the procedure was

suggestive; and (2) "whether there was some good reason for the failure to resort to less

suggestive procedures." *Id.* "[S]howing a witness a photographic array can constitute a denial of due process when police attempt to emphasize the photograph of a given suspect, or when the circumstances surrounding the array unduly suggest who an identifying witness should select." *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003) (citing *Simmons v. United States*, 390 U.S. 377, 383 (1968)). "In evaluating the suggestiveness of a photographic array we examine the totality of the circumstances to determine whether the array's suggestiveness denied the defendant due process." *Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972)). Factors to be considered include "the size of the array, its manner of presentation, and its contents." *Reese v. Fulcomer*, 946 F.2d 247, 260 (3d Cir. 1991). The defendant has the burden of proving that the identification procedure was impermissibly suggestive. *Id.* at 259.

If an identification procedure is found to be suggestive, the identification will still be admissible if it is found to be reliable. *Neil*, 409 U.S. at 199. Determining whether an identification is reliable requires considering the totality of the circumstances, including: (1) the witness' opportunity to observe the defendant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the witness' level of certainty at the confrontation; and (5) the time between the crime and the identification procedure. *Id.* at 199-200.

## III.   DISCUSSION

Green argues that Ortega's out-of-court and in-court identification of Green should be suppressed. Specifically, Green claims that Ortega's out-of-court identification was unduly suggestive because Detective Palmiero improperly steered Ortega toward the photograph of Green. (Green's Mot. 7.) Green claims that Detective Palmiero conducted the array after he knew the identity of Green, which caused Detective Palmiero to suggest that Ortega identify

Green. (*Id.*) In addition, Green claims Ortega's identification is unreliable because the carjacking occurred in the dark and Ortega would have been focused on the gun instead of the face of the perpetrator. (*Id.*) Green also claims the identification was made eleven days after the incident. (*Id.* at 8.) The Government responds that the array was not unduly suggestive and even if it were, the identification is still reliable. (Gov't's Resp. 7.) We agree with the Government.

There has been no evidence presented here to indicate that this photo array was unduly suggestive. Detective Palmiero testified that he did not verbally or non-verbally suggest that Ortega choose Green's photograph. His testimony was credible. Furthermore, even if one were to somehow conclude that the identification was suggestive, it would still be admissible because Ortega's identification is clearly reliable. Ortega had multiple opportunities to view Green's face during the carjacking, and contrary to Green's argument, each time Green's face was unobstructed and the area was well lit. Ortega also gave a physical description of one assailant that matched Green prior to identifying Green in the photo array. Even more, Ortega confidently identified Green in the photo array in a matter of seconds, within hours of when the carjacking occurred. The identification did not occur eleven days later. Rather, Ortega simply made a mistake when signing and dating the photo array. Finally, a review of the photo array itself clearly reveals that it is not unduly suggestive. Based upon all of the facts, it is clear that Ortega's identification is reliable and is admissible.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Michael Green's Motion to Suppress Out-of-Court

and In-Court Identification will be denied.

An appropriate Order follows.

**BY THE COURT:**

**R. Barclay Surrick, J.**